**R COMMUNICATIONS, INC. f/k/a R N Communications, Inc., Petitioner,**

v.

**Honorable John SHARP, Comptroller of Public Accounts, Respondent.**

No. D–3058.

Supreme Court of Texas.

Argued March 30, 1993.

Decided April 28, 1994.

Rehearing Overruled June 8, 1994.

Mark H. How, Dallas, for petitioner.

Gregory E. Perry, Dan Morales, William E. Storie, Austin, for respondent.

DOGGETT, Justice, delivered the opinion of the Court, in which all JUSTICES join.

We consider the constitutional extent to which a Texas taxpayer may be impeded in challenging a tax. We hold that conditioning a taxpayer's right to initiate judicial review on the payment of taxes or the posting of a bond equal to twice the alleged tax obligation violates the open courts mandate of the Texas Bill of Rights. TEX. CONST. art. I, § 13. Taxes cannot be raised by means that make meaningless our constitutional guarantees.

R Communications sought relief from an assessment for additional sales taxes that resulted from an audit by the Comptroller of Public Accounts. After an administrative hearing, an Amended Proposed Comptroller's Decision rejected the company's arguments and found it liable for $127,574.46 in taxes, penalties and interest. R Communications sought judicial review. At the urging of the Comptroller, the trial court dismissed for want of jurisdiction because R Communications had not first paid the tax or posted a statutorily required bond. See TEX.TAX CODE §§ 112.051, 112.101. The court of appeals affirmed. 839 S.W.2d 947. We reverse.

R Communications asserts that four Tax Code provisions violate its rights under both the Texas and United States Constitutions: section 112.108, which denies a taxpayer any form of declaratory relief; section 112.051, which conditions the right to file suit attack-

ing the tax's validity or its assessment or collection upon prior payment of the taxes; section 112.101, which precludes injunctive relief without prior tax payment or the posting of a bond, approved by both the court and the attorney general, equal to twice the amount of estimated tax liability; and section 111.022, which authorizes summary collection procedures without the State filing suit. R Communications essentially contends that, as a precondition to obtaining judicial review of a tax liability, it would be required to pay so much as to be forced out of business. It maintains that these provisions violate the equal protection, open courts, and due course of law provisions of the Texas Constitution, and the due process and equal protection provisions of the U.S. Constitution. *See* TEX. CONST. art. I, §§ 3, 13, 19; U.S. CONST. amend. XIV.

■ Where, as here, violations of both the state and federal constitutions are alleged, we look first to the Texas Constitution, "[b]asing decisions on [it] whenever possible." *Davenport v. Garcia,* 834 S.W.2d 4, 17 (Tex.1992). *See also H.L. Farm v. Self,* 37 Tex.Sup.Ct.J. 321, 322 (Jan. 5, 1994) (when presented with both state and federal constitutional claims, "we will examine our own Texas Constitution first"). If the challenged action violates our state constitution, consideration of any federal claim is unnecessary. *Davenport,* 834 S.W.2d at 17; *H.L. Farm,* 37 Tex.Sup.Ct.J. at 324 n. 6.

Of the various state constitutional claims, we focus on the taxpayer's assertion that the Tax Code violates the fundamental requirement that:

> All courts shall be open, and every person for an injury done him, in his lands, goods, person, or reputation, shall have remedy by due course of law.

TEX. CONST. art. I, § 13. In *Eustis v. City of Henrietta,* 90 Tex. 468, 39 S.W. 567, 569 (1897), we held that a statute requiring tax payment as a precondition to defending title to property against a claim of title under a tax sale violated both sections 13 and 19 of the Texas Bill of Rights. On subsequent

appeal, we again held "that the owner [of property subject to a tax levy] could not be required to pay the taxes as a condition precedent to making the defense" against the claim of title. *Eustis v. City of Henrietta,* 91 Tex. 325, 43 S.W. 259, 262 (1897); *see also Town of Pleasanton v. Vance,* 277 S.W. 89, 90 (Tex.Comm'n App.1925, judgment adopted) (Texas Constitution prohibits restriction on taxpayer's ability to contest liability in collection suit). These cases were consistent with our earlier decision that a statute requiring the posting of a bond as a precondition to access to the courts violated section 13 of the Texas Bill of Rights:

> A law which practically takes away from either party to litigation the right to a fair and impartial trial in the courts ... denies a remedy by due course of law.... [A]n act of the legislature which makes the right of an individual or corporation to prosecute an appeal to depend on the giving of a *supersedeas* bond, without reference to the ability or inability of such corporation or individual to give such a bond, is violative of the Constitution.

*Dillingham v. Putnam,* 109 Tex. 1, 14 S.W. 303, 304–05 (1890).[1]

Invalidating an increased filing fee as an unconstitutional litigation tax in *LeCroy v. Hanlon,* 713 S.W.2d 335, 341 (Tex.1986), we concluded that because the right of access to the courts is a "substantial right ..., the legislature cannot arbitrarily or unreasonably interfere." In accord with *LeCroy,* it is "[t]he government [that] has the burden to show that the legislative purpose outweighs the interference with the individual's right of access." *Id.* More recently, in *Texas Ass'n of Business v. Texas Air Control Bd.,* 852 S.W.2d 440, 448 (Tex.1993), this Court explained that one of the protections afforded by the constitutional guarantee of "open courts" is the right of citizens to "access to th[e] courts unimpeded by unreasonable financial barriers." In determining whether "an unreasonable financial barrier to access" is posed, consideration must be accorded to "the state interest involved." *Id.* at 449; *see*

---

1. We have from an early time recognized the right of access to open courts for corporations as well as natural persons.

*LeCroy,* 713 S.W.2d at 341 ("balanc[ing] the legislature's actual purpose in enacting a law against that law's interference with the individual's right of access to the courts.").

It is not enough for the State to justify a prepayment requirement simply by asserting that the government needs quick access to the funds. *State v. Flag–Redfern Oil Co.,* 852 S.W.2d 480, 485 (Tex.1993). "Application of a constitutional balancing test is particularly dependent upon a fully-developed factual record." *Brady v. Fourteenth Court of Appeals,* 795 S.W.2d 712, 715 (Tex.1990); *cf. Texas Ass'n of Business,* 852 S.W.2d at 442 ("overview of the regulatory scheme ... essential" in resolving constitutional claim). Rather than demonstrating the need for the challenged provisions, the State asserts a threat to its financial stability arising from any prepayment access to the courts, since "no one would pay their taxes on time." [2]

Such generalized fear of financial collapse is hardly realistic given the history of the statute in question. Until recently, taxpayers have been able to seek the very type of declaratory judgment of no tax liability sought here without regard to whether they had satisfied the prepayment provisions of section 112.051. *See Hammerman & Gainer, Inc. v. Bullock,* 791 S.W.2d 330, 331 & n. 1 (Tex.App.—Austin 1990, no writ); *Cobb v. Harrington,* 144 Tex. 360, 190 S.W.2d 709, 713–14 (1945).[3] This right to prompt, unimpeded declaratory relief was terminated by the enactment in 1989 of section 112.108 as an apparently minor element of a major revision of the Tax Code intended to ensure prompt payment by insurance companies. *See* SENATE FINANCE COMM., BILL ANALYSIS, Tex.S.B. 1573, 71st Leg., R.S. (1989).[4] Nor did any alleged threat to the foundation of state government from the longstanding practice of allowing taxpayers to initiate judi-

---

**2.** The State also attempts to distinguish *Texas Ass'n of Business* on the grounds that the penalties involved there were discretionary whereas tax assessment is heavily regulated. Yet nothing in that opinion's discussion of the open courts provision indicated any reliance on, or even a mention of, the fact that the environmental penalties at issue were assessed at the government's discretion. *See Texas Ass'n of Business,* 852 S.W.2d at 448–50. Even if the discretionary nature of the financial burden were a factor in the open courts balancing test, the State's attempt to rely on this factor would fail. Despite a constitutional mandate for equal taxation, TEX. CONST. art. 8, § 1, there is some discretion in assessing and collecting taxes. *See e.g.,* § 111.-022 (granting comptroller discretion to determine that a delay would jeopardize collection); *City of Arlington v. Cannon,* 153 Tex. 566, 271 S.W.2d 414, 416 (1954); *City of Wichita Falls v. J.J. & M. Taxman Refining Co.,* 74 S.W.2d 524, 530 (Tex.Civ.App.—Fort Worth 1934, writ ref'd), *cert. denied* 296 U.S. 587, 56 S.Ct. 98, 80 L.Ed. 415 (1935).

**3.** *See also First State Bank v. Sharp,* 863 S.W.2d 81, 83 (Tex.App.—Austin 1993, no writ); *Bullock v. Marathon Oil Co.,* 798 S.W.2d 353 (Tex.App.—Austin 1990, no writ); *Colonial Cafeteria–Arlington, Inc. v. Bullock,* 587 S.W.2d 211 (Tex.Civ.App.—Beaumont 1979, no writ); *Bullock v. Texas Skating Ass'n,* 583 S.W.2d 888 (Tex.Civ.App.—Austin 1979, writ ref'd n.r.e.).

**4.** The potential impact of this particular provision on taxpayers such as R Communications appears to have received no floor consideration in either legislative chamber. *See* Debate on S.B. 1573 on the Floor of the Senate, 71st Leg.,

R.S. (April 20, 1989) (tape available from Senate Staff Services office); *Hearings on S.B. 1573 Before the Senate Finance Comm.,* 71st Leg., R.S. (April 26, 1989) (tape available from Senate Staff Services Office); Debate on H.B. 2779 on the Floor of the House, 71st Leg., R.S., tape 72A (May 2, 1989) (available from House Staff Services Office); *Hearings on H.B. 2779 Before the House Ways & Means Comm.,* 71st Leg., R.S. (April 26, 1989) (tape available from House Staff Services Office). The only relevant committee discussion suggests that any adverse consequence for small businesses was either incidental or unintentional. Apparently the sole attention focused on the general type of problem presented today is the following exchange:

Senator Cyndi Krier:
It concerns me that we could string out a small taxpayer.... I know you're writing this looking at the big insurance companies that made you mad, that try to thumb their nose in our face, that probably did some things they shouldn't have done. But I'm looking at it from the perspective of a mom and pop grocery store or someone that could ... lose their right to challenge the collection of taxes that they might indeed not owe.
Joe Thrash (staff of Lt. Gov. William P. Hobby):
The provision is to protect the interests of the State. It doesn't really address that situation, where the taxpayer might not be able to continue making the payments.
*Hearings on S.B. 1573 Before the Senate Finance Comm.,* 71st Leg., R.S. (April 26, 1989) (tape available from Senate Staff Services Committee Office).

cial review receive any apparent legislative consideration.

In *Texas Ass'n of Business*, 852 S.W.2d at 449–50, the Court decided whether a financial barrier to court access was reasonable by examining the availability of less restrictive means to further governmental interests. Among the less restrictive alternatives available here are accelerated administrative proceedings and expedited court procedures. The State's asserted interest in speedy tax collection is contradicted by the apparent languid pace of administrative proceedings and collection efforts in this case. Although the administrative process was invoked by R Communications immediately after the State made a determination of liability, the Comptroller did not hold a hearing for three years. Another two years passed before the Comptroller issued a final administrative decision. The objective of timely collection of taxes would seemingly be furthered by permitting the taxpayer to initiate judicial review. Previously, we have not only encouraged prompt resolution of liability disputes through injunctive and declaratory relief, but have penalized those who delayed challenges until the institution of collection proceedings.[5]

█ While the open courts section affords a strong safeguard against unreasonable financial barriers to judicial review, it provides less protection against the imposition of prepayment and bond requirements on those

seeking to stay enforcement or the collection of a judgment. *See Texas Ass'n of Business*, 852 S.W.2d at 450; *Dillingham*, 14 S.W. at 304. By authorizing expedited procedures in the event that normal collection may be jeopardized, and by requiring payment or other security before injunctive relief can be sought, sections 111.022 and 112.101 protect the State against delays that may impinge its ability to collect taxes that may legitimately be owed. R Communications has not shown that these sections, in and of themselves, wholly prevent its right to challenge liability in court before the contested taxes are paid, nor has it shown an interest in obtaining an injunction that outweighs the State's need to protect its ability to ultimately collect the taxes owed.

At the same time, the State has not, however, shown that the complete prohibition of prepayment declaratory relief contained in section 112.108 reasonably serves any governmental interest, let alone one that would override R Communications' right to open courts. Instead of establishing the essential government-interest element in the Open Courts balancing test, the State relies upon sections 111.010 and 111.013(b) in noting that even an insolvent taxpayer can contest liability when defending a collection suit. In view of other tax code provisions, however, such ability to defend represents significantly less than certain and complete access to the courts.[6] The combination of the prepayment

**5.** *See State v. Federal Land Bank of Houston*, 160 Tex. 282, 329 S.W.2d 847, 850 (1959) (higher evidentiary burden in collection proceeding represents "penalty the taxpayer must pay for [failing to seek relief by mandamus or injunction,] sitting idly by while taxing authorities put into effect a[n unconstitutional, arbitrary and fundamentally wrong] plan of taxation"); *Cannon*, 271 S.W.2d at 417 (same); *see also City of Fort Worth v. Southwestern Bell Tel. Co.*, 80 F.2d 972, 974 (5th Cir.1936) ("[T]he practice in Texas apparently is to be liberal with injunctions before payment but opposed to recoveries afterward.").

**6.** The State can make a jeopardy determination from which taxes can forcibly be collected without filing a collection suit. *See* § 111.022. The State may perfect a lien on all of the delinquent taxpayer's non-exempt property, real and personal, merely by filing a tax lien notice with the appropriate county clerk. *See* Tex.Tax Code § 113.001–.002. Attaching to all after-acquired property until the taxes are paid, *see* Tex.Tax Code

§ 113.105, such liens render the taxpayer's property virtually unsalable. *See Selected Current Developments in Texas Administrative Practice: Pre-Decision Tax Liens*, Newsl. of the Sec. of Tax'n (State Bar of Texas, Austin), Nov. 1986, at 6. Moreover, the Comptroller can also garnish the taxpayer's bank accounts and freeze its property held by third parties. *See* Tex.Tax Code §§ 111.-021, 113.103. The Comptroller can seize and auction the taxpayer's property or, after affording a hearing, revoke the taxpayer's sales tax permit. *See* Tex.Tax Code §§ 111.0047, 111.017–.019. The latter is apparently routine practice in cases where the taxpayer does not remit payment but chooses to await a collection suit. *See* Tex. Tax Serv. (Matthew Bender) pt. 3, § 3.141[5] (June 1992). After revoking the sales tax permit, the State can effectively close a business by enjoining further sales of goods or services. *See* Tex.Tax Code § 151.262(a). Finally, by holding a purchaser of the taxpayer's business personally liable for the taxes if they are not withheld from the purchase price, section 111.020 imposes re-

provisions contained in sections 112.051 and 112.101, the ban on declaratory judgments in section 112.108, and the inadequacy of the remedy of awaiting the filing of a collection suit by the Comptroller mean that a taxpayer is financially restricted in its ability to get to court.

To remedy the constitutional infirmity in the current Tax Code, it is not necessary, however, to invalidate the State's entire tax collection scheme.[7] Without the recent legislative elimination of a declaratory remedy, R

Communications would appear to have available a means of obtaining timely access to the courts that would not impinge upon the State's interest in securing timely collection of taxes. Accordingly, insofar as it would preclude a taxpayer from obtaining judicial review of its tax liability by means of a declaratory action, section 112.108 is unconstitutional and void.[8] Since the trial court does, therefore, have jurisdiction to hear such a claim for declaratory relief, we remand to that court to permit the issue of R

---

strictions on the ability to sell it. *See* 34 Tex.Admin.Code § 3.7 (West 1993); *see also* Tex.Tax Rep. (CCH) ¶¶ 89–307, 61–470 (Mar.–Apr. 1993) ("A purchaser may not challenge the validity of the underlying liability of the seller."). All of these remedies are cumulative. *See* Tex.Tax Code § 111.015; Tex.Tax Rep. (CCH) ¶ 61–510 (Mar. 1993).

Even when the State chooses not to resort to these procedures and the taxpayer is given an opportunity to defend against a collection suit, the insolvent taxpayer faces severe presumptive burdens not encountered by the solvent taxpayer who files a section 112.051 protest suit. *Compare* § 111.013(a) (in collection suit, Comptroller's certificate is prima facie evidence of the amount and the delinquency of the taxes and of the Comptroller's compliance with the Code) *with* § 112.054 (protest suit is "Trial De Novo"). Taxpayers who, rather than challenging the constitutionality of an entire taxing scheme by injunction or request for declaratory relief, wait to question the constitutionality in defense to a collection suit have been penalized with the "very heavy and onerous burden" of proving not only that the taxation was arbitrary and illegal but also that it caused substantial individualized injury. *Federal Land Bank of Houston,* 329 S.W.2d at 850; *see Cannon,* 271 S.W.2d at 417; *Hays Consolidated I.S.D. v. Valero Transmission Co.,* 645 S.W.2d 542, 549 (Tex.App.—Austin 1982, writ ref'd n.r.e.).

**7.** A state constitutional guarantee has been recognized as providing a taxpayer's right to prepayment judicial review in a number of our sister states. *See, e.g., Johnson v. Diefendorf,* 56 Idaho 620, 57 P.2d 1068, 1073 (1936) (holding that protest payment requirement violates open courts guarantee of the Idaho Constitution by "clos[ing] the doors of justice"); *Bennett v. Davis,* 90 Me. 102, 37 A. 864, 865 (1897) (prepayment provisions violate taxpayer's right under article I, section 19 of the Maine Constitution, "to have right and justice administered to him freely and without sale"); *Inhabitants of Town of Warren v. Norwood,* 138 Me. 180, 24 A.2d 229, 237 (1941) (unconstitutional to require one seeking to test the validity of a tax sale to deposit amount equal to tax plus interest); *Jensen v. State Tax Comm'n,* 835 P.2d 965, 969 (Utah 1992) (requiring taxpayers to deposit the full amount of taxes before seeking review violates the open courts provision of the Utah Constitution, as applied to the plaintiff who could not afford such deposit); see also *North Port Bank v. State,* 313 So.2d 683, 687 (Fla.1975) (statute requiring tax or deposit, or posting bond, "if construed literally ... would deny to Appellant access to the courts specifically granted by the Constitution"); *Wisconsin Real Estate Co. v. City of Milwaukee,* 151 Wis. 198, 138 N.W. 642, 645 (1912) (prepayment requirement does not deny "certain remedy for all injuries" guaranteed by Wisconsin Constitution because it only applies to claims of procedural error or defect). *But see Howell v. State,* 282 Ala. 464, 213 So.2d 199, 201 (1968); *Bystrom v. Diaz,* 514 So.2d 1072, 1075 (Fla.1987); *Lakefront Realty Corp. v. Lorenz,* 19 Ill.2d 415, 167 N.E.2d 236, 241 (1960); *In re Simpson Manor, Inc.,* 57 Haw. 1, 548 P.2d 246, 251 (1976); *City of Lowell v. Marden & Murphy, Inc.,* 321 Mass. 597, 74 N.E.2d 666, 668 (1947), *cert. denied,* 332 U.S. 850, 68 S.Ct. 354, 92 L.Ed. 420 (1948); *State ex. rel. Souders v. District Court,* 92 Mont. 272, 12 P.2d 852, 854 (1932); *Cole v. State,* 294 Or. 188, 655 P.2d 171, 173 (1982); *Moore v. Langton,* 92 R.I. 141, 167 A.2d 558, 566 (1961); *Claggett v. Dep't of Revenue,* 464 N.W.2d 212, 213–14 (S.D.1990).

**8.** *See generally Brazosport Sav. & Loan Ass'n v. American Sav. & Loan Ass'n,* 161 Tex. 543, 342 S.W.2d 747, 752 (1961) (granting court jurisdiction, under art. I § 19, over declaratory action appealing administrative decision); *Texas Ass'n of Business,* 852 S.W.2d at 449 (noting that art. I, § 13 bars unreasonable restrictions against the right to bring statutorily-created right of judicial review).

Our holding today should not be construed to imply that the guarantee of open courts protects declaratory judgment actions per se. The constitutional defect in the current prohibition against such relief arises from its impact on taxpayers in combination with other provisions of the existing Code. We do not mandate an unconditional right to declaratory relief, but only direct that some constitutionally adequate means of judicial review not dependent on prior payment be provided.

Communications' tax liability to be finally resolved with a minimum of further delay.[9]

---

9. Because one Tax Code provision questioned by R Communications quite clearly cannot satisfy the constitutional command of open courts, it is unnecessary to review the remaining sections or alternative constitutional arguments. *Compare*

*Edgewood I.S.D. v. Kirby*, 777 S.W.2d 391, 398 (Tex.1989) (declining review of other constitutional claims by resolving suit solely under efficiency clause of art. VII, § 1).