# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-20-00025-CV

---

**The Texas Education Agency; Mike Morath, Commissioner of Education in his Official Capacity; and Doris Delaney, in her Official Capacity, Appellants**

**v.**

**Houston Independent School District, Appellee**

---

### FROM THE 459TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-19-003695, THE HONORABLE CATHERINE MAUZY, JUDGE PRESIDING

---

## D I S S E N T I N G   O P I N I O N

I believe that the Commissioner is authorized to take the actions Houston Independent School District (HISD) has challenged; therefore, I cannot join the Court's opinion and must respectfully dissent. I would reverse the trial court's order, vacate the temporary injunction, and render judgment dismissing HISD's claims.

The Commissioner "serve[s] as the education leader of the state" and the executive officer of the TEA and is charged with "carry[ing] out the duties imposed on [him] by the [State Board of Education] or the legislature," including those duties "in connection with the public school accountability system as prescribed by Chapters 39 and 39A" of the Education Code. Tex. Educ. Code § 7.055; *see also id.* §§ 39.001–.413 (Chapter 39, "Public School System Accountability"), 39A.001–.907 (Chapter 39A, "Accountability Interventions and Sanctions"). Acting within his broad powers and duties, the Commissioner may authorize special accreditation

investigations (SAIs) conducted under statutorily enumerated circumstances as well as when the Commissioner, in his discretion, "otherwise determines [one is] necessary." *See id.* § 39.057(a). A completed SAI allows the Commissioner to make discretionary interventions and impose sanctions on a school district under the express language of the Education Code:

> Based on the results of a [SAI], the commissioner may:
>
> (1) take appropriate action under Chapter 39A;
>
> (2) lower the school district's accreditation status or a district's or campus's accountability rating; or
>
> (3) take action under both Subdivisions (1) and (2).

*Id.* § 39.057(d). In turn, the first section in Chapter 39A provides, "The commissioner shall take *any of the actions* authorized by this subchapter [A] *to the extent the commissioner determines necessary if . . . the commissioner considers the action to be appropriate on the basis of a [SAI]* under section 39.057." *Id.* § 39A.001 (emphases added). These sections, read together, provide the Commissioner broad discretion to apply whichever Subchapter A interventions and sanctions the Commissioner considers "necessary" and "appropriate" based on SAI results as well as the power to contemporaneously lower a district's accreditation status. *See id.* §§ 39.057, 39A.001.

Subchapter A, in turn, expressly authorizes the appointment of a board of managers:

> The commissioner may appoint a board of managers to exercise the powers and duties of a school district's board of trustees if the district is subject to commissioner action under Section 39A.001 and:
>
> (1) has a current accreditation status of accredited-warned or accredited-probation;
>
> (2) fails to satisfy any standard under Section 39.054(e); or

2

> > (3) fails to satisfy financial accountability standards as determined by commissioner rule.

*Id.* § 39A.004. While it is true, as HISD contends and the Court notes, that appointing a board of managers under section 39A.004 requires the district to meet at least one of three enumerated conditions, the first of those conditions is that the district have an accreditation status of "accredited-warned" or "accredited-probation." *See id.* In a November 6, 2019 letter citing the SAI results, the Commissioner informed HISD that he would take that very action and lower HISD's accreditation status to "Accredited-Warned." Under section 39.057(d)(3), the Commissioner has the authority *both* to lower the district's accreditation status *and* "take appropriate action" under Chapter 39A based on SAI results. *See id.* § 39.057(d)(3). Therefore, the Commissioner is expressly authorized to lower HISD's accreditation status—which he had threatened to do—*and* then, based on that lowered accreditation, to appoint a board of managers under section 39A.004, which he also had threatened to do. *See id.* §§ 39.057(d)(3), 39A.001, 39A.004. Section 39A.004 does not require that the school district have had a "warned" or "probation" accreditation status for any minimum period before the appointment of a board of managers. *See id.* § 39A.004.

Nonetheless, HISD contends—and the Court agrees—that the SAI did not comply with the requirements of section 39.058 and may not, therefore, support the Commissioner's threatened sanctions or completed actions because: (1) the Commissioner himself or a designated hearing examiner did not conduct the informal review, and (2) HISD was not provided a hearing at which HISD could examine the evidence gathered during the SAI. *See id.* § 39.058(b) ("Before issuing a [SAI] report with its final findings, the agency must provide a person or entity the agency finds has violated a law, rule, or policy an opportunity for an informal review by the

commissioner or a designated hearing examiner."). As to the first contention, however, the Commissioner is statutorily authorized to delegate executive functions to his staff, *see id.* § 7.055(b)(5) ("The commissioner may delegate ministerial and executive functions to agency staff and may employ division heads and any other employees and clerks to perform the duties of the agency."), and the final report issued by TEA after informal review recites that Dr. Cottrill, Deputy Commissioner of Governance and Accountability for TEA, "completed the informal review and approved th[e] final report" "pursuant to a delegation from the Commissioner."

Additionally, the applicable TEA rule—promulgated under authority of the Education Code—specifically provides for informal review by a "TEA representative," implying that, in promulgating the rule, the Commissioner delegated such authority to staff and supporting the final report's statement that Dr. Cottrill conducted the review pursuant to the Commissioner's delegation. *See* 19 Tex. Admin. Code § 157.1123(b) (Tex. Educ. Agency, Informal Review) ("A written request for informal review must be addressed to the designated Texas Education Agency (TEA) representative."), (f) ("Following the informal review by the TEA representative, a final report, assignment, determination, or decision will be issued."); *see also* Tex. Educ. Code § 39.058(a) ("The agency shall adopt written procedures for conducting [SAIs] under this subchapter . . . [and] shall make the procedures available on the agency Internet website.").

As to HISD's second contention that a hearing was required, HISD cites no authority requiring that a school district be provided a hearing as part of an informal review or be apprised of the evidence upon which the TEA supports its SAI reports, and I have found no such authority. *Cf.* Tex. Educ. Code § 39.058 (requiring TEA to adopt written procedures for conduct of SAIs and for informal review of preliminary findings, but not requiring hearing or disclosure of evidence relied upon by TEA); 19 Tex. Admin. Code § 157.1123(c) (providing that for

4

informal review of non-renewal of charter of open-enrollment charter school, revocation of such school's charter, or reconstitution of such school's governing board, TEA representative "at the request" of such school "shall meet with [such school's] representatives" and that such meeting "is not a contested case hearing"). Moreover, when the legislature intends to require a *hearing* in agency proceedings, as opposed to merely informal *review* of agency decisions, it has amply demonstrated its ability to do so in unambiguous language. *See, e.g.*, Tex. Educ. Code §§ 12.116 (providing for "hearing" when teacher under continuing contract is discharged or suspended without pay), 39A.301 (providing for "hearing" at State Office of Administrative Hearings to review Commissioner's decision to close school district, district campus, or open-enrollment charter school); Tex. Tax Code § 111.1042 (specifying that comptroller's "informal review" of tax-refund claim is "not a hearing or contested case"); Tex. Hum. Res. Code § 32.039 (distinguishing "informal review"—to be conducted by commission, after which review "notice of the results" are to be provided to person charged with filing fraudulent claim—from subsequent optional request for "hearing"). The Court expresses a due-process concern but does not identify what life, liberty, or property interest is at stake. However, even if such an interest were at stake, the proper avenue for relief would be a challenge to the constitutionality of the applicable statute, which HISD has not asserted.

I thus conclude that the Commissioner is authorized to appoint a board of managers on the basis of the SAI results and that, therefore, HISD has not alleged a valid ultra vires claim based on the Commissioner's threatened appointment of a board of managers to govern HISD because sections 39.507, 39A.001, and 39A.004 expressly authorize such actions under the facts alleged.

5

In its second ultra vires claim, HISD alleges that the Commissioner did not have authority to direct Delaney in March 2019 to "oversee the governance of" HISD when the district "was not subject to Commissioner action under Section 39A.001." *See* Tex. Educ. Code §§ 39A.001 (outlining prerequisites that authorize interventions under Subchapter A, including if Commissioner "considers the action to be appropriate on the basis of a [SAI]"), .002 ("If a school district is subject to commissioner action under Section 39A.001, the commissioner may . . . appoint a conservator to oversee the operations of the district"). HISD contends that, while Delaney had been appointed as a "campus-level conservator" over Kashmere High School only, the Commissioner was unauthorized to "expand" her role to that of a "district-level conservator" absent the prerequisites of section 39A.001 being met. Under HISD's contended framework, "campus-level" (Subchapter C) conservators have the authority merely to oversee "district-level support" to a particular campus and to implement the campus's targeted improvement plan, while "district-level" (Subchapter A) conservators have the authority to oversee operations of the entire district and issue directives to the superintendent and board of trustees. *Compare id.* § 39A.003(c), *with id.* § 39A.102(b).

However, assuming that Chapter 39A contemplates the conservator-level distinction that HISD posits, granting HISD the relief it seeks on its claim challenging Delaney's appointment as a "district-level" conservator would require the court to "reach back in time to undo the past executive action of the TEA, presumably by ordering the Commissioner to change his prior final and unappealable decision[]" to appoint Delaney as a "district-level" conservator. *See Morath v. Progreso Indep. Sch. Dist.*, No. 03-16-00254-CV, 2017 WL 6273192, at *3 (Tex. App.—Austin Dec. 7, 2017, pet. denied) (mem. op.). When the Commissioner allegedly "expanded" Delaney's role to that of a district-level conservator and appointed her in such

6

capacity, such appointment was a final action, and HISD has cited no authority providing for the appeal thereof. *See id.* (determining that Commissioner's prior action of appointing board of managers for school district was "past executive action" that could not be undone and was "final and unappealable"). "We have previously held that such an ultra vires claim—i.e., one that requests relief requiring the undoing of an already-final administrative act of the Commissioner—is jurisdictionally defective." *Id.* (citing *Texas Educ. Agency v. American Youthworks, Inc.*, 496 S.W.3d 244, 265–67 (Tex. App.—Austin 2016), *aff'd sub nom. Honors Acad., Inc. v. Texas Educ. Agency*, 555 S.W.3d 54 (Tex. 2018).

However, notwithstanding the rule outlined in *Progreso*, and as the Court correctly notes, a party may indeed seek to enjoin purely prospective conduct despite its inability to challenge an already-final action by asserting a viable ultra vires claim. *See, e.g.*, *Chambers-Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 355 (Tex. 2019) (holding that state had viable ultra vires claims against counties for exceeding their statutory authority by entering into oyster-harvesting lease with other government entity and could maintain suit to "prospectively enjoin" lease); *City of El Paso v. Heinrich*, 284 S.W.3d 366, 376 (Tex. 2009) (holding that ultra vires claims entitle plaintiff to prospective injunctive relief, not retrospective relief, and thus that plaintiff widow of police officer could obtain future monthly survivor benefits but not past payments under ultra vires theory). Although such authority would generally permit HISD to challenge Delaney's authority going forward to oversee HISD's operations and issue directives to the board, that avenue of purely prospective relief was foreclosed when the SAI concluded with the final report and, based on that, the Commissioner's decision to appoint a district-wide conservator, which was an authorized intervention. *See* Tex. Educ. Code § 39A.002(7). In light of the Commissioner's authorized decision to appoint Delaney as a district-wide conservator

7

based on the SAI, as a matter of law HISD is not entitled to any prospective relief enjoining her statutorily authorized powers. Accordingly, I would hold that the trial court does not have jurisdiction over HISD's ultra vires claim challenging the Commissioner's appointment of Delaney as a "district-level" conservator to oversee governance of HISD, and thus that HISD has no cause of action for any prospective relief enjoining Delaney's statutory powers as district-wide conservator.

In its third ultra vires claim, HISD alleges that Delaney was unauthorized to direct HISD's board to suspend its superintendent search. However, as explained above, Delaney's appointment as a district-wide conservator to oversee HISD's operations is authorized by the SAI and is an already-final action, and section 39A.003(c)(1) expressly grants to conservators the power to "direct an action to be taken by the principal of a campus, the superintendent of the school district, or the board of trustees." *Id.* § 39A.003(c)(1). Accordingly, I would conclude that the trial court did not have jurisdiction over HISD's ultra vires claim challenging Delaney's issuance of directives to HISD.

With respect to its rule challenge,[1] HISD asserts that TEA rule 97.1061(g),[2] on which the Commissioner partly relied in "threatening to impose unlawful sanctions and interventions" such as installing a board of managers over the district, "is neither valid nor applicable because it conflicts with . . . Texas Education Code §§ 39A.111, 39A.906." However,

---

[1] Although appellants did not assert in their plea to the jurisdiction that the trial court does not have jurisdiction over HISD's rule challenge, issues of subject-matter jurisdiction may be raised for the first time on appeal, and we are obligated to review sua sponte issues affecting jurisdiction. *See M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004) (per curiam).

[2] Rule 97.1061(g) provides, "If a campus is assigned an unacceptable rating under TEC, §39.054(e), for a fifth consecutive year, the commissioner shall order the appointment of a board of managers to govern the district or closure of the campus." 19 Tex. Admin. Code § 97.1061(g) (2020) (Tex. Educ. Agency, Interventions and Sanctions for Campuses).

whether HISD has alleged a valid rule challenge under section 2001.038—that is, our "jurisdictional inquiry"—depends on whether it has alleged that the rule or its threatened application interferes with or impairs its legal rights or privileges. *Combs v. Entertainment Publ'ns, Inc.*, 292 S.W.3d 712, 720 (Tex. App.—Austin 2009, no pet.); *see* Tex. Gov't Code § 2001.038. Neither in its petition nor in its appellate brief does HISD identify any legal right or privilege the rule allegedly interferes with or impairs, nor could it do so due to the Commissioner having the statutory authority, as explained above, to take the threatened actions and interventions. Therefore, I conclude that the challenged rule and its threatened application do not interfere with or impair any legal rights or privileges of HISD as a matter of law and would hold that the trial court, therefore, did not have jurisdiction over HISD's rule challenge.

I further conclude that, because the trial court lacked jurisdiction over all of HISD's claims, HISD cannot establish either of the first two elements required to obtain a temporary injunction (TI). *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) ("To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim."). Therefore, I would conclude that the trial court abused its discretion in issuing the TI. *See id.*

For these reasons, I respectfully dissent from the Court's opinion affirming the trial court's order issuing the TI and implicitly denying appellants' plea to the jurisdiction.

9

_____

Thomas J. Baker, Justice

Before Chief Justice Rose, Justices Baker and Triana

Filed:   December 30, 2020

10