# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00462-CV

**Sanadco Inc., a Texas Corporation; Mahmoud A. Isba, a/k/a Mahmoud Ahmed Abuisba, a/k/a Mike Isba; Walid Abderrahman; Majic Investments, Inc.; Faisal Kahn; Isra Enterprises, Inc.; Hattab Al-Shudifat; Haifa Enterprises, Inc.; EID Corp.; Mohammed S. Al Hajeid; Majdi Rafe Okla Nsairat; and Omar Unlimited, Inc. Individually, Appellants**

**v.**

**The Office of the Comptroller of Public Accounts of the State of Texas; Susan Combs, Individually and in her Official Capacity as Comptroller of Public Accounts of the State of Texas; and Greg Abbott in his Official Capacity as Attorney General for the State of Texas, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT NO. D-1-GV-10-000902, HONORABLE TIM SULAK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

After the Comptroller of Public Accounts performed an audit on a convenience store owned by Sanadco Inc., the Comptroller and the Attorney General (cumulatively the "Comptroller") filed suit against Sanadco to recover delinquent taxes. In response, Sanadco filed various counterclaims against the Comptroller arguing that the manner in which she calculated the amount of taxes due was under the terms of an unauthorized rule, that many of the actions that she engaged in while conducting her audits were ultra vires, and that the provision of the tax code authorizing audits by sampling and projecting was unconstitutional. After Sanadco filed its counterclaims, the Comptroller filed a plea to the jurisdiction contending that the district court did

not have jurisdiction over the counterclaims. Subsequent to reviewing the plea and convening a hearing, the district court dismissed Sanadco's counterclaims for lack of jurisdiction. On appeal, Sanadco challenges the dismissal of its counterclaims, and we will reverse the portion of the district court's order dismissing Sanadco's rule challenge, affirm the remainder of the district court's order dismissing Sanadco's other counterclaims, and remand the case for further proceedings.

## RELEVANT STATUTORY SCHEME AND AUDITING MEMOS

Before delving into the background and issues in this case, a brief overview of the governing framework for this case as well as a brief synopsis of the actions by the Comptroller that form the subject of this case is helpful. Under the tax code, convenience stores are required to maintain their sales records for tax purposes, Tex. Tax Code § 151.025, and the Comptroller is authorized to examine and audit the records of convenience-store owners, *id.* §§ 151.025, 111.004. In addition, the Comptroller may use sampling and projection methods for estimating the amount of taxes owed if "the taxpayer's records are inadequate or insufficient." *Id.* § 111.0042(b). Moreover, if the Comptroller "is not satisfied" with the calculated tax owed based on the taxpayer's records, the Comptroller may determine the amount of tax owed from "other information available to the comptroller." *Id.* § 111.008(a).

In addition to requiring convenience stores to maintain sales records, the tax code also requires brewers, manufacturers, wholesalers, and distributors of alcoholic beverages to file reports chronicling their sales to stores and listing the stores by name. *Id.* §§ 151.461-.462. Similarly, the tax code authorizes the Comptroller to request wholesalers and distributors of tobacco products to file the same type of reports. *Id.* §§ 154 (addressing cigarette sales), 155.105 (covering non-cigarette

2

tobacco products). The type of information required in these reports is commonly referred to as H.B. 11 information because the reporting requirements were enacted by House Bill 11 of the 80th legislature. *See* Act of May 3, 2007, 80th. Leg., R.S., ch. 129, §§ 1-3, 2007 Tex. Gen. Laws 159, 159-62.

Once an audit has been performed, the store owner may request a redetermination from the Comptroller within 30 days of receiving notice of the Comptroller's assessment. Tex. Tax Code § 111.009(a), (b). In addition, the owner may also request a hearing on the redetermination, *id.* § 111.009(c), before the State Office of Administrative Hearings, *id.* § 111.00455. If no request for a redetermination is filed within 30 days, "the determination is final on the expiration of the period." *Id.* § 111.009(b). As an alternative to requesting a redetermination, an individual may also pay the assessed taxes along with a written protest and then file a suit challenging the tax. *Id.* §§ 112.051(a), (b), .052.

Prior to the passage of House Bill 11, the Comptroller issued a memo entitled AP 92, which provided guidance to auditors performing audits of convenience stores. In the memo, the Comptroller explained that there had been a "lack of uniformity in estimated convenience store audits" and that "mark-up percentages and product mix percentages" were developed to be used in audits "when necessitated by lack of reliable records" or if a store's "records are unavailable, inadequate or unreliable." After House Bill 11 passed, the Comptroller issued another memo to audit personnel entitled AP 122. The new memo updated AP 92 and required auditors to use H.B. 11 information "to produce the most accurate audit results." The issuance of these two memos along with various actions taken by the Comptroller when performing convenience-store audits form the basis for this case.

3

## BACKGROUND

Turning to the facts of this case, Sanadco owns a convenience store, and Mahmoud Isba operates the store and is designated as a responsible person for Sanadco. The Comptroller audited Sanadco and determined that Sanadco had underreported its taxable sales for alcohol and tobacco products. The amount of the deficit was determined using H.B. 11 data. After making her determination, the Comptroller sent a bill for the estimated amount owed and for interest on that amount as well as a penalty.

After receiving notice of the amount due, Sanadco did not file an administrative challenge to the assessment, nor did it pay the amount due. Accordingly, the Attorney General filed suit to collect the delinquent taxes. In response, Sanadco filed an answer and raised several counterclaims for declaratory relief. Those counterclaims were made against the Office of the Comptroller, Susan Combs in her official capacity as Comptroller, and Greg Abbott in his official capacity as the Attorney General. In its response, Sanadco also named as counter-plaintiffs other individuals and companies who had been assessed similar taxes. Those other individuals and companies are Walid Abderrahman; Majic Investments, Inc.; Faisal Kahn; Isra Enterprises, Inc.; Hattab Al-Shudifat; Haifa Enterprises, Inc.; EID Corp.; Mohammed S. Al Hajeid; Majdi Rafe Okla Nsairat; and Omar Unlimited, Inc.[1] Unlike Sanadco, the other named counter-plaintiffs all sought redeterminations of their assessed taxes through administrative review, but none of the administrative proceedings had been completed by the time that the individuals were added to the lawsuit.

---

[1] For ease of reading, we will generally refer to all of the counter-plaintiffs as Sanadco.

Regarding its counterclaims, Sanadco alleged six complaints relevant to this appeal. In its first counterclaim, Sanadco asserted that AP 92 and AP 122 are administrative rules but that they were not promulgated in compliance with the requirements of the administrative procedure act. Accordingly, Sanadco sought a declaration that those memos are invalid administrative rules. In its second counterclaim, Sanadco alleged that the Comptroller engaged in ultra vires actions when she issued AP 92 and AP 122 and thereby authorized auditors to estimate taxes owed by convenience-store owners without "first ascertaining whether adequate records are available" from the taxpayer to perform an audit. For those reasons, Sanadco sought declarations asserting that "the Comptroller is not authorized to estimate convenience store audits using the methods described in AP 92 or AP 122 until their proper adoption, and/or that the authorization of their use is a non-discretionary ultra vires act committed without legal authority." In its third counterclaim, Sanadco contended that the Comptroller acted without legal authority when she improperly instructed auditors to use H.B. 11 information for convenience store audits "without first ascertaining whether the determination can be made from the taxpayer's records." Accordingly, Sanadco insisted that the Comptroller's decision to require the use of H.B. 11 data is an ultra vires act and, therefore, sought declarations that the use of H.B. 11 information was improper and that the governing statutes do not allow "the Comptroller to give conclusive effect to the HB11 data."[2] In its fourth counterclaim, Sanadco alleged that the Comptroller improperly authorized auditors to "use an abbreviated procedure which bypassed

---

[2] In this counterclaim, Sanadco also sought a declaration that the Comptroller's decision to require the use of H.B. 11 information constituted an impermissible and invalid rule. Because that declaratory relief would seem to parallel the assertions made in Sanadco's first counterclaim, our analysis regarding the first counterclaim is intended to address the declaration regarding H.B. 11 as well.

5

examination of the taxpayer's records and authorized an estimation of his tax liability based solely on the invalid H.B. 11 data, without first determining the adequacy of the taxpayer's records." For that reason, Sanadco insisted that the Comptroller was acting ultra vires and sought a declaration that the governing tax code provisions do not authorize the abbreviated procedure. In its fifth counterclaim, Sanadco alleged that the Comptroller acted ultra vires by authorizing the imposition of a 50% penalty without proof of fraud or of an intent to avoid the tax as required by the tax code. *See* Tex. Tax Code § 111.061(b). In its sixth counterclaim, Sanadco sought a declaration that the provision of the tax code authorizing sample and projection audits for estimating taxes owed is unconstitutionally vague and is, "by its nature, a denial of substantive and procedural due process." *See id.* § 111.0042.

After Sanadco filed its counterclaims, the Comptroller filed a plea to the jurisdiction. In her plea and brief in support of the plea, the Comptroller argued that the district court did not have jurisdiction over Sanadco's counterclaims because Sanadco did not allege a proper rule challenge, because the claims are barred by sovereign immunity, because Sanadco and the other named counter-plaintiffs failed to exhaust their administrative remedies before filing suit, because some of the counterclaims were not ripe for review, and because Sanadco and the other counter-plaintiffs did not have standing to challenge the allegedly unconstitutional tax statute.

After reviewing the pleadings, the plea, and Sanadco's response to the plea, the district court signed an order granting the Comptroller's plea.[3] On appeal, Sanadco contests the

---

[3] In addition to the six counterclaims mentioned above, Sanadco also alleged the following additional counterclaims: (1) that the Comptroller engaged in an unconstitutional taking when she improperly collected sales and use taxes, and (2) that the tax code provision authorizing the Comptroller to impose a ten percent penalty if she believes that "the amount due for a tax period is jeopardized by delay" is unconstitutional.

district court's order granting the Comptroller's plea and, in six issues, challenges the district court's dismissal of its six counterclaims.[4]

## STANDARD OF REVIEW

"A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). A party to a lawsuit may challenge a trial court's subject-matter

The responsive filing containing the Comptroller's plea to the jurisdiction also served as a motion for summary judgment. In the plea portion of the filing, the Comptroller sought dismissal of the six counterclaims discussed in the body of the opinion but did not discuss the two additional counterclaims. In the summary-judgment portion, the Comptroller sought judgment in her favor regarding the two additional counterclaims as well as some of the other counterclaims. In a separate order, the district court granted the motion for summary judgment.

In two issues on appeal, Sanadco argues that the district court erred by dismissing the two additional counterclaims listed above. However, those additional claims were disposed of by summary judgment. The legislature has empowered appellate review of a trial court's interlocutory order granting a plea to the jurisdiction by a governmental unit, *see* Tex. Civ. Prac. & Rem. Code § 51.014(a), but has not empowered us with authority over interlocutory orders granting a governmental unit's motion for summary judgment. Accordingly, in this appeal, we only address the six counterclaims listed in the body of the opinion that were attacked and dismissed on jurisdictional grounds.

[4] In its counterclaims, Sanadco filed suit against the Comptroller in her individual capacity and sought to initiate a class action on behalf of individuals who had similarly been assessed taxes. In her plea to the jurisdiction and brief in support of the plea, the Comptroller sought dismissal of Sanadco's claims against her in her individual capacity on the ground that Sanadco had failed to "plead any facts that would expose [her] to individual liability" and because the pleadings demonstrate that Sanadco "*cannot* plead any facts that would give rise to such liability." Similarly, the Comptroller requested that the district court dismiss the class action claims for several reasons, including that none of the convenience-store owners had "satisfied the statutory prerequisite to filing a class action under" the tax code. *See* Tex. Tax Code § 112.055 (allowing for class actions by persons who have paid their taxes under protest). The district court granted the Comptroller's plea in its entirety, and Sanadco does not challenge the dismissal of its claims against the Comptroller in her individual capacity or of its class-action claims. Accordingly, those claims are not considered in this appeal and remain dismissed.

7

jurisdiction over a case by filing a plea. *Houston Mun. Emps. Pension Sys. v. Ferrell*, 248 S.W.3d 151, 156 (Tex. 2007). Determinations regarding whether a trial court has jurisdiction over a case are questions of law. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). Subject matter jurisdiction is a question of law that appellate courts review de novo, *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007), and may be raised for the first time in an interlocutory appeal, *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95-96 (Tex. 2012). Moreover, appellate courts must consider their jurisdiction "even if that consideration is sua sponte." *Freedom Commc'ns., Inc. v. Coronado*, 372 S.W.3d 621, 624 (Tex. 2012) (per curiam).

On appeal, we review de novo a trial court's decision to grant a plea to the jurisdiction. *Ferrell*, 248 S.W.3d at 156. In performing this jurisdictional analysis, courts look to the "plaintiff's petition to determine whether the facts pled affirmatively demonstrate that jurisdiction exists." *Holland*, 221 S.W.3d at 642. "If the pleadings are insufficient to establish jurisdiction but do not affirmatively demonstrate an incurable defect, the plaintiff should be afforded the opportunity to replead." *Id.* at 643. However, if "the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend." *Miranda*, 133 S.W.3d at 227.

## DISCUSSION

As mentioned above, Sanadco challenges the dismissal of its six counterclaims in six separate issues on appeal.

**Sanadco's First Issue**

In its first issue on appeal, Sanadco urges that the district court erred by dismissing its counterclaim regarding AP 92 and AP 122. In its counterclaim, Sanadco sought a declaration that the memos are invalid administrative rules. Essentially, Sanadco contends that the memos required the Comptroller's auditors to use certain methods when performing audits of all convenience stores and that the Comptroller used the procedures specified in the memos when performing the audits at issue in this case. In challenging the district court's order, Sanadco insists that the memos constituted administrative rules as defined by the administrative procedure act but that the rules were not adopted in compliance with the act. *See* Tex. Gov't Code §§ 2001.021-.041; *see also id.* § 2001.003(6) (defining "rule"). Accordingly, Sanadco contends that the district court had jurisdiction to consider its challenge to the rules because the administrative procedure act empowers a party to seek a declaration challenging the validity or applicability of a rule, *see id.* § 2001.038, including one not adopted in compliance with the act, *see El Paso Cnty. Hosp. Dist. v. Texas Health & Human Servs. Comm'n*, 247 S.W.3d 709, 715 (Tex. 2008).

In supporting the district court's dismissal of this counterclaim, the Comptroller contends that the provision of the administrative procedure act authorizing rule challenges does not apply in this case because the memos do not qualify as rules under the act. As support for this proposition, the Comptroller argues that the memos are simply statements regarding the internal management of the agency and do not impose any duties or requirements on convenience-store owners. On the contrary, the Comptroller insists that the memos are designed to improve the accuracy of audits by requiring auditors, not taxpayers, to use certain auditing methods. Furthermore,

9

the Comptroller urges that although the memos may help auditors ascertain whether taxpayers owe money, the taxpayer may challenge the determination. Accordingly, the Comptroller insists that any effect on a taxpayer caused by the implementation of AP 92 and AP 122 would only be binding after an administrative hearing, which she contends supports the conclusion that those memos are not rules.

Because we believe that AP 92 and AP 122 are rules, we must conclude that the district court erred by dismissing Sanadco's first counterclaim. Under the administrative procedure act, a rule is defined as "a state agency statement of general applicability that: (i) implements, interprets, or prescribes law or policy; or (ii) describes the procedure or practice requirements of a state agency." Tex. Gov't Code § 2001.003(6)(A). For rule determinations, "general applicability" refers to statements affecting the interest of the public and does not refer to statements issued when determining the rights of individuals. *Combs v. Entertainment Publ'ns, Inc.*, 292 S.W.3d 712, 721 (Tex. App.—Austin 2009, no pet.). Further, the statutory definition "includes the amendment or repeal of a prior rule" but excludes "a statement regarding only the internal management or organization of a state agency and not affecting private rights or procedures." Tex. Gov't Code § 2001.003(6)(B)-(C). In determining whether an agency statement is a rule, courts consider "the intent of the agency, the prescriptive nature of the guidelines, and the context in which the statement was made." *Entertainment Publ'ns*, 292 S.W.3d at 722.

AP 92 states that formulas were developed for estimating convenience-store audits to promote uniformity. Essentially, the memo sets out mark-up percentages that were to be used in all cases where "records are unavailable, inadequate or unreliable." Similarly, AP 122 provides guidelines for convenience-store audits and instructs that H.B. 11 information "**must** be the starting point" for all convenience-store audits conducted after the date of the memo.

10

By their language, both memos are statements implementing, interpreting, or prescribing law or policy. *Cf. id.* at 721 (concluding that letters by Comptroller indicating her intention to apply statute in all cases "involving brochure fundraising firms" without regard to individual factors were rules). The directives in the memo apply to audits performed on all convenience-store owners and not just to the named counter-plaintiffs, and the memos, particularly AP 122, reveal the Comptroller's intention to apply particular information and methods when performing all audits of convenience stores in all future cases and regardless of any individual circumstances. *See Trinity Settlement Servs., LLC v. Texas State Sec. Bd.*, No. 03-10-00639-CV, 2013 Tex. App. LEXIS 9487, at *15-16 (Tex. App.—Austin Aug. 1, 2013, no pet. h.) (concluding that agency statement did not qualify as rule because it applied only to particular company and because agency did not express intention to apply statement to all future cases).

Another factor weighing in favor of a determination that the memos are rules is Sanadco's allegation that the Comptroller is in fact generally using directives and formulas in those memos when performing audits on convenience stores and that the Comptroller used the memos during the audits of the convenience stores at issue in this case. In other words, the memos had a tangible effect and were not simply advisory statements. *See Brinkley v. Texas Lottery Comm'n*, 986 S.W.2d 764, 770 (Tex. App.—Austin 1999, no pet.) (explaining that letters from Commission setting forth criteria by which licensees could determine if their eight-liner machines were legal were not rules because they were merely informal views bearing upon internal agency management in absence of statute giving letters legal effect or attempt by agency to enforce statement against licensee). Given that the memos had effects on convenience stores at large, we also cannot agree

11

with the Comptroller's assertion that the memos were only statements directed to auditing personnel "regarding only the internal management or organization" of the Comptroller's office. *See* Tex. Gov't Code § 2001.003(6)(C); *cf. Texas Mut. Ins. Co. v. Vista Cmty. Med. Ctr., LLP*, 275 S.W.3d 538, 555 (Tex. App.—Austin 2008, pet. denied) (determining that staff report concerning inconsistent implementation of rule was not itself rule because report was presented to agency but agency took no official action regarding report and because it simply presented possible correction to stop inconsistency).

Although we need not thoroughly pursue the issue here, we are also persuaded that AP 122 is a rule because that memo requires the use of H.B. 11 information as a primary tool for estimating taxes regardless of the condition of the taxpayer's records. That requirement is noteworthy because it seems like a departure from the provisions of the tax code authorizing estimating techniques when the taxpayer's records are somehow inadequate and when the Comptroller is "not satisfied" with a tax report that has been filed "or the amount of the tax required to be paid." *See* Tex. Tax Code §§ 111.0042, .008; *see also El Paso Cnty. Hosp. Dist.*, 247 S.W.3d at 714 (concluding that agency letter setting cutoff date for seeking reimbursement was rule because it was statement of general applicability, affected all hospitals, and implemented agency policy by modifying pre-existing base-year rule). This type of modification to prior practices and governing frameworks would seem to more properly fall under the category of a rule rather than a statement about an agency's internal organization.

In addition, we are also not persuaded by the Comptroller's assertion that the ability of a taxpayer to challenge an audit performed under the methods described in the memos

12

somehow precludes a conclusion that the memos are rules. Assuming that the ability to challenge a tax assessment could affect whether the audit was performed under the terms of a rule, the assessment would seem to be final and binding upon those individuals who do not contest their assessments. Regardless, formally promulgated rules may contain provisions authorizing administrative challenges without affecting their status as rules, and for that reason, we do not believe that the ability to seek administrative review forecloses a challenge to whether agency directives were enacted under the terms of an improperly promulgated rule.

In reaching our result, we would be remiss if we did not mention that the line that separates rules from statements of "internal management or organization" is a blurry one. *See* Tex. Gov't Code § 2001.003(6); *see Slay v. Texas Comm'n on Envtl. Quality*, 351 S.W.3d 532, 546 (Tex. App.—Austin 2011, pet. denied) (describing distinction as "elusive"). Although the legislature has attempted to distinguish the two through legislation, making the distinction is often not an easy task, particularly given the varied functions that agencies are charged with undertaking. In discussing the difficulty in making these determinations, this Court has explained that the core concept to consider is whether the agency statement has "a binding effect on private parties." *Slay*, 351 S.W.3d at 546; *see also id.* at 546, 548 (concluding that evidence supported trial court's determination that agency statement was not rule because there was evidence that agency commissioners "were not *bound* to follow [statement's] methodology when exercising their legislatively conferred discretion to impose penalties"). Although this is an extremely close case, we believe that the record as it has been developed at this stage of the lawsuit compels a conclusion that the memos at issue have sufficient effect on private parties to render them rules.

13

In light of the preceding, we conclude that the directives in AP 92 and AP 122 are in fact rules. For that reason, we must also conclude that the district court had jurisdiction over Sanadco's claim that AP 92 and AP 122 were invalid rules and that, therefore, the district court erred by dismissing Sanadco's first counterclaim. Accordingly, we sustain Sanadco's first issue on appeal.

**Sanadco's Second, Third, Fourth, and Fifth Issues**

In its second, third, and fourth issues, Sanadco challenges the dismissal of its requested declaratory relief regarding actions taken by the Comptroller that it contends are ultra vires acts. Specifically, Sanadco urges that the following actions by the Comptroller are not supported by any governing law: the Comptroller's decision to require auditors to estimate taxes owed by using the methods described in AP 92 and AP 122 and to authorize her auditors to use H.B. 11 information to conduct abbreviated tax audits. In asserting that these actions are ultra vires, Sanadco points to section 111.0042 of the tax code, which allows auditors to use sampling auditing methods when a taxpayer's records are unsatisfactory. *See* Tex. Tax Code § 111.0042. Similarly, Sanadco refers to a rule in the administrative code that authorizes the Comptroller to use "a sample and projection auditing method to determine tax liability" when a taxpayer's records are unsatisfactory. *See* 34 Tex. Admin. Code § 3.282(c), (d). In light of the statutory provision and the rule, Sanadco insists that the Comptroller's decision to perform the audits in the manner described is contrary to the governing law. In its fifth issue, Sanadco challenges the dismissal of his declaratory claim alleging that the Comptroller acted ultra vires by authorizing a 50% penalty for fraud. Specifically, Sanadco insists that although subsection 111.061(b) of the tax code authorizes the Comptroller to impose penalties, the provision limits its imposition to circumstances in which it is determined that a failure

14

to pay the tax "due was a result of fraud or an intent to evade the tax" or that the taxpayer engaged in fraudulent conduct to affect the "outcome of an audit." *See* Tex. Tax Code § 111.061(b). Relying on that statute, Sanadco insists that the Comptroller did not make the requisite determinations before imposing the fraud penalty on convenience-store owners.

Furthermore, Sanadco contends that even though none of the named counter-plaintiffs had fully exhausted their administrative remedies regarding the Comptroller's tax assessments, the district court still had jurisdiction to consider these declaratory complaints because parties are not required to exhaust their administrative remedies for properly pleaded ultra-vires claims. Accordingly, Sanadco insists that the district court had jurisdiction over its declaratory claims requesting the Comptroller to comply with the governing statutes and rules.

Generally speaking, a party must exhaust all of its administrative remedies before seeking judicial review of an agency determination. *Friends of Canyon Lake, Inc. v. Guadalupe-Blanco River Auth.*, 96 S.W.3d 519, 525 (Tex. App.—Austin 2002, pet. denied); *cf. Burgess v. Gallery Model Homes, Inc.*, 101 S.W.3d 550, 558 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (explaining that Comptroller has exclusive jurisdiction to resolve tax refunds and that party must exhaust such remedy before filing refund suit); *cf.* Tex. Gov't Code § 2001.171(empowering person who has exhausted his administrative remedies and who is aggrieved by final agency decision to seek judicial review). Exhaustion of administrative remedies is necessary in order to waive sovereign immunity, which otherwise typically forecloses suits against government officials. *See Assignees of Best Buy v. Combs*, 395 S.W.3d 847, 869 (Tex. App.—Austin 2013, pet. filed). In its brief, Sanadco correctly points out that the supreme court has recognized an exception to the

15

general rule for claims alleging that government officials have engaged in ultra vires acts. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372-73, 380 (Tex. 2009) (explaining that with one exception, "governmental immunity protects government officers sued in their official capacities to the extent that it protects their employers" and that suits filed against government officials seeking "to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity"); *Appraisal Review Bd. of Harris Cnty. v. O'Connor & Assocs.*, 267 S.W.3d 413, 418-19 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (outlining exception to exhaustion requirement for ultra vires claims and stating that generally courts may only interfere with duties of agency when officials exceed statutorily conferred powers even though administrative remedies have not been exhausted).

However, we do not believe that the exception applies to Sanadco's claims. In order to fall within the exception, a party must allege that the official "acted wholly outside [his] jurisdiction," and allegations that an agency official failed to fully comply "with all of the intricacies" of the governing statutes and rules are insufficient to confer jurisdiction. *Friends of Canyon Lake*, 96 S.W.3d at 528; *see O'Connor & Assocs.*, 267 S.W.3d at 419. As a preliminary matter, we note that the H.B. 11 information that the Comptroller used for calculating the audits was information that the legislature required wholesalers to provide regarding their sales of alcohol and tobacco products to convenience-store owners. *See* Tex. Tax Code §§ 151.462, 154.212. Moreover, the bill analysis for H.B. 11 reveals that the law was enacted because of "growing concern over fraud among convenience store owners in the area of sales tax reporting" and that the legislature

16

was requiring the information in order to help the Comptroller perform her audits of convenience stores. Senate Comm. on Bus. & Commerce, Bill Analysis, Tex. H.B. 11, 80th Leg., R.S. (2007).

In addition, the legislature has specifically empowered the Comptroller to perform tax audits of convenience stores. *See* Tex. Tax Code §§ 111.001 (empowering Comptroller to collect sales taxes), .004-.0041 (authorizing Comptroller to examine records of taxpayers). Importantly, the legislature has also allowed the Comptroller to estimate the amount of taxes due in certain circumstances. *See id.* §§ 111.0042 (allowing Comptroller to use sampling auditing techniques if certain conditions are met), .008 (authorizing Comptroller to use other information if she is dissatisfied with tax report). Moreover, the tax code directs the Comptroller to impose a penalty of 50% of the taxes due if the Comptroller concludes that a taxpayer's failure to pay was the "result of fraud or an intent to evade the tax." *Id.* § 111.061(b).

Although Sanadco may disagree with the manner in which the Comptroller is performing her duties and her decision to use legislatively prescribed information for estimating the amount owed in her audits, we cannot agree that Sanadco has alleged complaints about actions wholly outside of the Comptroller's authority. Allegations that the Comptroller is not complying completely with every statutory requirement when performing the duties that she is authorized to perform are not sufficient to invoke the ultra-vires exception. *See Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Envtl. Quality*, 307 S.W.3d 505, 517-18 (Tex. App.—Austin 2010, no pet.) (determining that allegations that agency reached incorrect result when exercising its delegated authority does not constitute ultra-vires claims); *O'Connor & Assocs.*, 267 S.W.3d at 419 (explaining that assertions that agency hearings did not fully comply with statutory procedural requirements

17

were not enough to invoke ultra-vires exception); *Friends of Canyon Lake, Inc.*, 96 S.W.3d at 528 (concluding that arguments that agency did not provide required notice and information during application process were insufficient to invoke exception); *cf. Texas Comm'n of Licensing & Regulation v. Model Search Am., Inc.*, 953 S.W.2d 289, 292 (Tex. App.—Austin 1997, no writ) (relating that claim that agency had authority to interpret statute but had interpreted provision incorrectly was insufficient to invoke ultra-vires exception because possibility that agency might interpret provision incorrectly does not destroy agency's ability to make that determination).

In light of the fact that Sanadco's petition failed to demonstrate that the named counter-plaintiffs had failed to exhaust their administrative remedies and in light of our determination that Sanadco's allegations did not properly invoke the ultra-vires exception to the exhaustion requirement, we must conclude that Sanadco's petition did not invoke the jurisdiction of the district court to consider its requested declaratory relief. For these reasons, we cannot conclude that the district court erred by dismissing Sanadco's requested declaratory relief, and therefore, we overrule Sanadco's second, third, fourth, and fifth issues on appeal. *See Creedmoor-Maha Water Supply Corp.*, 307 S.W.3d at 515 (noting that party does not avoid jurisdictional limitation by filing claim under uniform declaratory judgment act and that act is not general waiver of immunity).[5]

---

[5] On appeal, Sanadco contends that exhaustion of administrative remedies was not warranted in this case because its claims presented pure questions of law and were based on uncontested facts. Assuming without deciding that Sanadco invokes a viable exception to the exhaustion-of-remedies doctrine, we disagree with Sanadco's assertion that the relief that it sought only involved pure questions of law. In addition to seeking declarations regarding whether certain procedures by the Comptroller complied with relevant governing law, Sanadco also sought in its counterclaims to have the counter-plaintiffs be relieved of the obligation to pay their respective taxes, to recover compensatory damages from the Comptroller as well as interest and attorney's fees, and to obtain a judgment directing the Comptroller "to account . . . for all of the damages caused to" the

**Sanadco's Sixth Issue**

In its final issue on appeal, Sanadco asserts that the district court erred by dismissing on jurisdictional grounds the counterclaim that section 111.0042 of the tax code is unconstitutional. That provision authorizes the Comptroller to use sampling auditing methods if certain criteria are met. Tex. Tax Code § 111.0042. In its sixth counterclaim, Sanadco sought a declaration that the provision is unconstitutionally vague as written and as applied to the counter-plaintiffs.

In order for a trial court to have jurisdiction over a declaratory-judgment claim, a party must allege "a justiciable controversy as to the rights and status of parties actually before the court for adjudication, and the declaration sought must actually resolve the controversy." *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163-64 (Tex. 2004). "A justiciable controversy is one in which a real and substantial controversy exists involving a genuine conflict of tangible interests and not merely a theoretical dispute." *Texas Dep't of Pub. Safety v. Moore*, 985 S.W.2d 149, 153 (Tex. App.—Austin 1998, no pet.). If there is no case or controversy, then any declaration issued by a trial court would constitute an impermissible advisory opinion. *Brooks*, 141 S.W.3d at 164.

Although Sanadco urges the statute's unconstitutionality, neither his filing containing the counterclaim nor his appellate briefs contain any allegation regarding a dispute between the Comptroller and the named counter-plaintiffs involving the statute in question. In particular, Sanadco does not assert that the Comptroller used or threatened to use the sampling methods authorized in

counter-plaintiffs. *Cf. Harris Cnty. Appraisal Dist. v. ETC Mktg.*, 399 S.W.3d 364, 368 (Tex. App.—Houston [14th Dist.] 2013, pet. filed) (disagreeing with assertions that claims were just questions of law and that exhaustion requirement did not need to be met because party was seeking to have its tax assessments set aside and could not, therefore, be pursuing pure question of law).

19

the provision when performing the audits for any of the counter-plaintiffs. To the contrary, Sanadco's filings in the district court and in his appellate briefs all allege that the Comptroller improperly used H.B. 11 information when performing audits. Accordingly, Sanadco did not plead any conflict regarding the statute, and there was no justiciable controversy between the named counter-plaintiffs and the Comptroller. For that reason, we cannot conclude that the district court erred by dismissing its requested declaratory relief, and therefore, we overrule Sanadco's sixth issue on appeal.

## CONCLUSION

Having overruled Sanadco's second, third, fourth, fifth, and sixth issues, we affirm the portion of the district court's order dismissing on jurisdictional grounds the following declaratory counterclaims urged by Sanadco: that the Comptroller acted ultra vires by implementing AP 92 and AP 122, that the Comptroller acted ultra vires by requiring the use of H.B. 11 information during audits of convenience stores, that the Comptroller acted ultra vires by authorizing abbreviated audits and by giving preclusive effect to H.B. 11 information during those audits, that the Comptroller acted ultra vires by authorizing the imposition of a fraud penalty without requiring a determination that all the statutory criteria had been met, and that section 111.0042 is unconstitutional. Having sustained Sanadco's first issue on appeal, we reverse that portion of the district court's order dismissing the counterclaim asserting that AP 92 and AP 122 were improperly promulgated rules. Accordingly, we remand the case for proceedings consistent with this opinion.

_____

David Puryear, Justice

Before Justices Puryear, Henson, and Goodwin
  Justice Henson not participating

Affirmed in Part; Reversed and Remanded in Part

Filed:   September 26, 2013

21